Abraham N. Goldman, SBN 102080
David Springfield, SBN 226630
ABRAHAM N. GOLDMAN & ASSOCIATES, LTD.
P.O. Box 120 / 12896 Rices Crossing Road
Oregon House, California 95962-0120
Tel: (530) 692-2267  Fax: (530) 692-2543
Email: agoldman@succeed.net
davids@succeed.net

Attorneys for Plaintiff-Relator
JOEI LYN SANCHES

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel,* JOEI LYN SANCHES,<br><br>  Plaintiffs,<br><br>CITY OF CRESCENT CITY; CITY OF CRESCENT CITY HOUSING AUTHORITY; SUSIE MENDEZ and ELI NAFFAH; and DOES 1-100, and Each of Them, Inclusive,<br><br>  Defendants. | CASE No.:   08-CV-05663-MEJ<br>Related Case: 08-CV-01395-MEJ<br>**Filed Under Seal**: 12/18/08<br>**UNSEALED BY COURT ORDER**: 11/6/09<br><br>**FIRST AMENDED *QUI TAM* COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Relator JOEI LYN SANCHES brings this first amended *qui tam* action in the name of the United States of America, by and through her undersigned attorneys, Abraham N. Goldman and David Springfield, and alleges as follows.

### INTRODUCTION

1. This is an action by *qui tam* Relator JOEI LYN SANCHES, on behalf of the United States against SUSIE MENDEZ, CITY OF CRESCENT CITY, the CITY OF CRESCENT CITY HOUSING AUTHORITY, and ELI

NAFFAH, to recover penalties and damages arising from one or more violations of 31 U.S.C. §3729(a) by defendants, as set forth below.

## THE PARTIES

2. Relator JOEI LYN SANCHES is a resident of the State of California, and is the former Crescent City Director of Finance, and the original source and the initial person other than defendants and/or Does 1-100 to discover and disclose the facts and violations alleged in this complaint.

3. Defendant CITY OF CRESCENT CITY ("CITY") and CITY OF CRESCENT CITY HOUSING AUTHORITY ("HA") are public entities. Their offices are in Crescent City, County of Del Norte, California. The HA obtains and holds in trust for the United States Department of Housing and Urban Development ("HUD"), monies for use in HUD Section 8 programs, in the form of separate grants for (a) Housing Subsidies and (b) Administrative Fees.

4. Defendant SUSIE MENDEZ ("MENDEZ"), is a resident of the State of California, and at all times relevant was the HA's Housing Director, and an employee and managing agent of the CITY, and/or the HA. MENDEZ' salary, at all relevant times, was paid directly or through the HA with federal funds, part of which is the subject of this action. MENDEZ directly participated in, authorized, ratified, aided and abetted, and conspired to commit and/or cover-up the activities alleged herein.

5. Defendant ELI NAFFAH ("NAFFAH"), was the City Manager of the CITY, at relevant times set forth below, and directly approved, ratified, and conspired with the other defendants, in certain matters alleged below, by knowingly authorizing, approving and/or ratifying and/or aiding and abetting certain violations of 31 U.S.C. § 3729 against the United States alleged in this action, and/or knowingly failing to disapprove said claims and fraud, and/or knowingly aiding and abetting said fraud, and its fraudulent cover-up.

6. The true names and identities of Defendants DOES 1 through 100 are presently unknown to plaintiff. Plaintiff-relator alleges, on information and belief, that each of the named defendants and/or DOES 1-100 and/or all of them were employees, agents, co-conspirators and/or aiders and/or abettors of each other in the activities described herein of the other defendants during the time of this matter. Plaintiff-relator alleges, upon information and belief, that named defendants and/or DOES 1-100, and/or all of them and each of them, (1) acted in conspiracy or with the intent to injure and defraud the UNITED STATES, as alleged in this action; (2) acted with fraudulent and/or reckless intent to violate §3729(a) in violation of law as described herein, and/or (3)aided and abetted said acts, ratified said acts, and actively covered up said acts. Plaintiff-relator alleges, on information and belief, that one or more of the named defendants and/or DOES 1-100 were and are responsible for the promulgation of policies and procedures utilized by the CITY, and/or the HA, pursuant to which the acts, omissions and injuries alleged herein occurred. Plaintiff-relator will seek to amend this complaint as soon as the true names and identities of defendant DOES 1-100 have been ascertained.

## JURISDICTION & VENUE

7. This action arises under the False Claims Act, 31 U.S.C. §3729 *et seq.*

8. This court maintains jurisdiction over this action pursuant to 31 U.S.C. §§3732 (a) (False Claims Act) and 28 U.S.C. §1331 (Federal Question).

9. Venue is proper in this Court pursuant to 31 U.S.C. §3732 (a) because: (i) the defendants reside in this district; (ii) the defendants transact business in this district and did so at all times relevant to this complaint; and, as averred below, (iii) defendants committed acts prescribed by 28 U.S.C. §§3729, *et seq.*, giving rise to this action, within this district.

10. Plaintiff-relator has served a copy of her original Complaint upon the United States, together with a written Disclosure Statement setting forth and enclosing all material evidence and information she possesses, pursuant to the requirements of 31 U.S.C. §3730 (b) (2) and Fed. R. Civ. P. Rules 4(d) (4). The UNITED STATES declined to intervene and this case has been unsealed.

11. Plaintiff-relator has complied with all other conditions precedent to bringing this action.

12. Prior to the filing of this action, plaintiff-relator reported the acts and activities alleged in this action to the United States: to HUD by telephone hotline in or about May 2008, and again to the United States Department of Justice, Federal Bureau of Investigation ("FBI") in or about October 2008. At that time in October 2008, plaintiff-relator disclosed all of the information she had as an original source. The FBI Special Agent responded that the FBI would not pursue the matter itself at the time, but that plaintiff-relator should file this action and keep the FBI Special Agent informed.

### *Relator JOEI LYN SANCHES*

13. Plaintiff-relator worked as Director of Finance for Defendant CITY from approximately March 23, 2007, until September 25, 2007.

14. As Director of Finance, plaintiff-relator's responsibilities included, among others, reviewing compliance with Federal Law, and Federal and State grant guidelines.

15. During plaintiff-relator's tenure with the CITY (March 2007 – September 2007), she acquired direct knowledge of facts raising suspicion of the violations of 29 U.S.C. §3729 involved here, and was about to begin thoroughly investigating the false claims described below.

//

### *The HUD Housing Choice Voucher Program*

16. The HUD housing choice voucher program is the U.S. federal government's major program for assisting very low-income families, the elderly, and the disabled to afford decent, safe, and sanitary housing in the private market. Since housing assistance is provided on behalf of the family or individual, participants are able to find their own housing, including single-family homes, town houses and apartments. Housing choice vouchers are administered by local and municipal Public Housing Agencies ("HA"). The HA receive separate federal funds to be held in trust for the UNITED STATES from HUD, (1) to pay for the Voucher Program and (2) to separately administer the Voucher Program. A housing subsidy is paid to the landlord directly by the HA on behalf of the participating family. The family then pays the difference between the actual rent charged by the landlord and the amount subsidized by the program. Under certain circumstances, if authorized by the HA, a family may use its voucher to purchase a modest home.

17. As set forth above, in addition to receiving separate funds from the UNITED STATES for payments under the Voucher Program, the PHA receives separate restricted administrative funds to be used for the exclusive purpose of administration of the Voucher Program, and other uses allowed by law.

18. Pursuant to HUD regulations, the administrative funds received by the HA are to be kept in a separate trust account, for the benefit of the UNITED STATES.

19. Only as allowed by law, an HA may accumulate administrative reserves to be used exclusively for purposes allowed by HUD rules and regulations.

20. At all times, HA administrative funds and reserves remain as monies of the UNITED STATES.

FIRST AMENDED *QUI TAM* COMPLAINT  Case No. 08-cv-05663-MEJ

21. All the acts and omissions in this matter occurred, upon information and belief, at the offices of CITY and HA, in Crescent City, California.

## FIRST CAUSE FOR VIOLATION OF THE FALSE CLAIMS ACT, 31 U.S.C. 33729(a)

22. Effective in fiscal year 2004, for administrative funds received in 2003 and after, new HUD regulations required that restricted administrative reserves not exceed 105% of administrative fees paid to the HA.

23. At all times relevant, defendants MENDEZ and the HA were aware of the 2004 restrictions on administrative fee reserves, as a mater of law, and by notices sent to them by HUD.

24. In 2003, the HA was overpaid by HUD approximately $160,000 for the Voucher Program's Housing Assistance Payments (HAP), (separate from administrative fees and reserves).

25. Starting in or about fiscal year 2005, and continuing until on or about September, 2007, and possibly to April, 2008, MENDEZ and the HA intentionally and knowingly began to secretly accumulate restricted administrative reserves in excess of the 105 percent cap, without informing HUD or the UNITED STATES.

26. The intent of MENDEZ and the HA was to defraud the UNITED STATES, by secretly accumulating restricted administrative reserves in excess of the 105 percent cap, not disclosing these excess reserves, and then using these excess administrative reserve funds, held in trust for the UNITED STATES, instead of the CITY's own funds, to pay for HAP shortfalls if and when HUD recaptured or required repayment of the 2003 HAP overpayment.

27. During the relevant time period involved, fiscal year 2005 through September, 2007, and possibly to April, 2008, MENDEZ and the HA were required to, and, upon information and belief, did, submit to HUD monthly,

quarterly and annual reports which included actual and/or implied certifications that the HA was in compliance with HUD regulations, rules and procedures, including the 105 percent cap on restricted administrative reserves.

28. Upon information and belief, the reports and actual and/or implied certifications referred to in paragraph 27, submitted to HUD, were required for the HA to continue to receive its monthly payment from HUD of administrative funds, from which MENDEZ and the HA were secretly accumulating reserves in excess of the 105 percent cap.

29. The monthly, quarterly and annual reports and actual and/or implied certifications described in paragraphs 25-28 above were each submitted by MENDEZ and the HA with the knowledge the reports and actual and/or implied certifications were false, or in reckless disregard for the truth that the HA was not in compliance with HUD regulations, rules and procedures, with the intent HUD would rely upon these actual and implied false certifications, and with the knowledge and intent HUD would rely thereon, and continue to make full and undiminished payment of monthly administrative fees to the HA.

30. The monthly, quarterly and annual reports discussed in paragraphs 27-29 above were submitted to HUD by MENDEZ and the HA with knowing omissions that the HA was accumulating restricted administrative reserves in excess of the 105 percent cap, and/or with misrepresentation of the excess funds over the 105 percent cap, with the knowledge that HUD would rely thereon, continue to make full and undiminished payment of monthly administrative fees to the HA, and so that HUD would not ask for repayment of these excess administrative funds held in trust for the UNITED STATES, or seek to recapture the excess amounts through deductions from future payments, and/or to prevent HUD from reducing the monthly payments because the administrative funds had

not been used and were accumulating in a reserve in excess of the 105 percent cap.

31. Upon information and belief, for the fiscal 2005, 2006 and 2007 years, MENDEZ and the HA submitted to HUD annual applications for HAP and administrative funds. MENDEZ and the HA submitted each of these applications to HUD knowing they contained false actual and/or implied certification that the HA was in compliance with HUD regulations, rules and procedures, and failed to disclose and/or misrepresented that MENDEZ and the HA were intentionally and as part of a knowing plan, continuously accumulating restricted administrative reserves in excess of the 105 percent cap, and not reporting the same, as alleged above.

32. In reliance upon the actual and implied certifications, reports and applications discussed in paragraphs 25-30 above, HUD continued to make monthly payments to the HA, and did not seek repayment or recapture of the reserves over the 105 percent cap.

33. In or about September, 2006, MENDEZ and the HA were notified that HUD had reduced the HA's HAP allowance (used to pay for the Voucher Program, not administrative fees) by approximately $151,000 because of the 2003 HAP overpayment, alleged above.

34. By September, 2006, and/or, continuing through December, 2006, without notice to, or the knowledge or consent of HUD and the UNITED STATES; MENDEZ and the HA had knowingly and wrongly accumulated approximately $160,000 in administrative reserves over the 105 percent cap, pursuant to the acts and omissions alleged above.

35. With the intent to avoid a future recapture of these funds held in trust for HUD, MENDEZ and the HA, aided and abetted and in conspiracy with the CITY and NAFFAH, the CITY's Manager, devised and implemented a

scheme and plan to spend down the administrative reserves by calendar year end December 31, 2006, and/or early 2007 with the intent to avoid repayment to HUD.

36. As currently known, as part of the plan set forth in paragraphs 34-35, MENDEZ and the HA, aided and abetted by and with the approval of CITY and NAFFAH, illegally submitted false claims to the HA to use monies of the UNITED STATES for the following improper purchases for CITY, and not the HA. As currently known, the false claims on monies of the UNITED STATES involved requests for payment for the following items for the use and possession of CITY as follows, on or about the following dates:

   a) On 12/13/2006 HUD funds used for the purchase for CITY of a vehicle for illegitimate non-HUD use in the amount of $18,269; Check No. 404600.

   b) On 12/20/2006 HUD funds used for Vehicle Taxes on the illegitimate non-HUD vehicle in the amount of $1,239.00; Check No. 404711.

   c) On 1/10/2007 HUD funds paid for Furniture for CITY in the amount of $385.03; Check No. 404817.

   d) On 1/10/2007 HUD funds paid for Furniture in the amount of $684.26; Check No. 404817.

   e) On 1/10/2007 HUD funds paid for Furniture in the amount of $321.73; Check No. 404817.

   f) On 2/01.2007 HUD funds paid for Furniture in the amount of $727.16; Check No. 404947.

   g) On 2/01/2007 HUD funds paid for Furniture in the amount of $364.65; Check No. 404947.

FIRST AMENDED *QUI TAM* COMPLAINT  Case No. 08-cv-05663-MEJ

37. The exact extent and details of the participation of NAFFAH and CITY in the above acts is in the possession of defendants and is not fully known by plaintiff. In September, 2007, while CITY's finance manager, plaintiff was beginning to audit the purchases comprising the false claims alleged in paragraph 36, and was summarily terminated by CITY and NAFFAH within days after a meeting with NAFFAH and MENDEZ at CITY's offices, at which time the matters alleged in paragraph 36 came to plaintiff's attention.

38. As a result of plaintiff's abrupt termination, plaintiff was prevented from learning further details of the participation of NAFFAH and CITY, and the acts and omission of MENDEZ and HA alleged in paragraphs 25-37 above.

39. As currently known, CITY and/or NAFFAH and/or both participated in the acts and omissions alleged in paragraph 36 by designating and approving the purchase of said property for CITY with the use of restricted HUD funds, and/or assisting in designating and approving the purchase, with the knowledge that the claims made by CITY for these funds were in violation of HUD restrictions on the use of these monies belonging to the UNITED STATES, and/or to avoid repayment and/or recapture of these funds by the UNITED STATES.

40. During and after the false claims on monies of the UNITED STATES in December, 2006 – February, 2007 set forth in paragraphs 35-38, MENDEZ and HA continued to submit monthly, quarterly and annual reports, actual and implied certifications and requests, for each month, quarter and fiscal year through and including, upon information and belief, September, 2007 and/or April, 2008, with the knowledge that the certifications were false for failing to reveal the accumulated administrative reserve in excess of 105 percent, the conspiracy, plan and scheme to avoid repayment or recapture of the excess administrative reserve, and the false claims presented to the UNITED STATES to use HUD monies for purchases for CITY, as set forth above.

41.  As a legal and/or proximate result of, and in reliance on, the acts and/or omissions and/or certifications by MENDEZ and HA alleged above, HUD and the UNITED STATES were induced to continue to make full and/or unreduced monthly administrative payments to HA for fiscal year 2005 through on or about April, 2008.

42.  As a legal and/or proximate result of the acts and omissions of MENDEZ, HA, CITY and NAFFAH, false claims were presented to and paid by funds of HUD and the UNITED STATES, as set forth above.

43.  As a legal and/or proximate result of one or more acts of each defendant, individually and/or in conspiracy, the HA was able to avoid, or decrease an obligation to repay the UNITED STATES, and/or successfully keep HUD and the UNITED STATES from the knowledge of the plan and scheme by MENDEZ and HA to accumulate administrative reserves in excess of the 105 percent cap.

44.  By said acts and omissions, MENDEZ and HA, individually and/or in conspiracy with each other and one or more of the other named defendants, have violated one or more of 31 U.S.C. §§3729(a)(1), (a)(2), (a)(3), (a)(4), and/or (a)(7).

45.  By said acts and omissions, NAFFAH and CITY have, individually and/or as aiders and abettors and/or as co-conspirators, violated 31 U.S.C. §§3729(a)(1), (a)(3) and/or (a)(7).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff-relator prays that judgment be entered against defendants, jointly and/or severally, as follows:

1. Judgment against the defendants and in favor of the UNITED STATES in an amount equal to three times the amount of damages the UNITED STATES Government has sustained because of Defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. §3729 *et. seq.*;
2. That plaintiff-relator be awarded the maximum amount allowed pursuant to §3730 (d) of the False Claims Act;
3. That plaintiff-relator be awarded all costs and expenses of this action, including attorneys' fees;
4. That plaintiff-relator and the UNITED STATES recover such other relief as Court deems just and proper.

Respectfully submitted,

Date:  April 12, 2010          ABRAHAM N. GOLDMAN & ASSOCIATES, LTD.

                               By:    */s/ Abraham N. Goldman*
                                      Abraham N. Goldman
                                      David Springfield
                                      Attorneys for Plaintiff-relator
                                      JOEI LYN SANCHES

**DEMAND FOR JURY TRIAL**

The plaintiff-relator hereby demands trial by jury.

*/s/ Abraham N. Goldman*
Abraham N. Goldman
Attorney for Plaintiff-relator
JOEI LYN SANCHES

# CERTIFICATE OF SERVICE

I certify that I am over the age of 18 years, I am not a party, and I am employed at 12896 Rices Crossing Road, P.O. Box 120, Oregon House, CA 95962 in the County of Yuba, California.  I also certify that, pursuant to common business practice, I served the attached:

**FIRST AMENDED *QUI TAM* COMPLAINT**

on the following parties and attorneys in this action by causing a true and correct copy thereof to be delivered addressed as shown below, by electronic mail (E-mail) and by *1st Class U.S. Mail on April 12, 2010,* to:

| | |
|---|---|
| Joseph P. Russoniello, U.S. Attorney<br>Joann M. Swanson, Chief, Civil Division<br>**Steven J. Saltiel,** Assistant U.S. Attorney<br>Box 36055 / 450 Golden Gate Avenue<br>San Francisco, CA  94102<br>Email:  Steven.Saltiel@usdoj.gov | Attorneys for the UNITED STATES<br>in *SANCHES II*, Case No. CV-08-05663-MEJ |
| **Robert N. Black, Esq**.<br>Martha D. Rice, Esq.<br>299 'I' Street, Suite 11-B<br>Crescent City, CA 95531<br>Email: rblack@attyblack.com | Attorney for defendants City of Crescent City; Crescent City Housing Authority; Susie Mendez; Eli Naffah;<br>in *SANCHES II*, Case No. CV-08-05663-MEJ |
| Richard C. Bolanos, Esq.<br>**Morin I. Jacob, Esq.**<br>LIEBERT CASSIDY WHITMORE<br>153 Townsend Street, Suite 520<br>San Francisco, CA 94107<br>Email: rbolanos@lcwlegal.com<br>            mjacob@lcwlegal.com | Attorneys for Defendants<br>City of Crescent City, Dennis Burns, Eli Naffah, Mike Scavuzzo, and Douglas Plack<br>in *SANCHES I*, Case No. CV-08-01395-MEJ |

I am familiar with common business practice regarding collection and processing of documents for mailing with the U.S. Postal Service.  Such documents were sealed prepaid and placed for collection on the date stated below.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this certification was executed *April 12, 2010,* at Oregon House, County of Yuba, California.

*/s/ Katherine W. Lendech*
Katherine W. Lendech

---

FIRST AMENDED *QUI TAM* COMPLAINT               Case No. 08-cv-05663-MEJ