UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, JOEI LYN SANCHES<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CRESCENT CITY; CITY OF CRESCENT CITY HOUSING AUTHORITY; SUSIE MENDEZ; ELI NAFFAH; and DOES 1-100 inclusive,<br><br>Defendants.<br>_____/ | No. C 08-05663 MEJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF-RELATOR'S FIRST AMENDED *QUI TAM* COMPLAINT (DKT. #34)** |

**I. INTRODUCTION**

Before the Court is Defendants' City of Crescent City (the "City"), City of Crescent City Housing Authority ("CCHA"), Susie Mendez and Eli Naffah's (collectively "Defendants") Motion to Dismiss Plaintiff and Relator Joei Lyn Sanches' ("Plaintiff") First Amended *Qui Tam* Complaint ("FAC"). (Dkt. #34.) After consideration of the parties' papers and oral arguments, relevant legal authority, and good cause appearing, the Court ORDERS as follows.

**II. BACKGROUND**

The following facts are taken from Plaintiff's FAC. (Dkt. #34.) Plaintiff worked as the Finance Director for Defendant the City from March 23, 2007 until September 25, 2007. The City and CCHA maintain a Public Housing Authority, which obtains and holds in trust monies for United States Department of Housing and Urban Development's ("HUD") Section 8 housing programs in the form of separate grants for housing subsidies and administrative fees. HUD maintains a voucher program, administered by Housing Agencies such as CCHA, through which it provides housing assistance to low-income families. CCHA receives federal funds to be held in trust for the United States from HUD to pay for and administer the voucher program. Pursuant to HUD regulations, the

administrative funds received by Housing Agencies are to be kept in a separate trust account, and Housing Agencies may be entitled to accumulate reserves to use for HUD-approved purposes.

Plaintiff alleges that HUD imposed a cap, effective in fiscal year 2004, requiring that administrative reserves not exceed 105% of administrative fees paid to the Housing Agency. Plaintiff maintains that in 2003, CCHA was overpaid by HUD approximately $160,000 for the voucher program's Housing Assistance Payments ("HAP"), which are separate from the administrative fees and reserves. Plaintiff claims that Defendants Mendez and CCHA intentionally and knowingly secretly accumulated restricted administrative reserves in excess of the 105% cap beginning in fiscal year 2005 and continuing on until between September 2007 and April 2008 ("relevant time period"). Plaintiff alleges that the intent of Mendez and CCHA was to use the excess administrative reserves to pay for HAP shortfalls if HUD recaptured or required repayment of the 2003 overpayment. Plaintiff maintains that Mendez and CCHA submitted knowingly false quarterly and annual reports to HUD during the relevant time period which certified that CCHA was complying with HUD regulations, when Mendez and CCHA were secretly accumulating reserves in excess of the 105% cap, causing HUD to make the full payment of monthly administrative fees to CCHA.

Plaintiff claims that in September 2006, Mendez and CCHA were notified that HUD reduced CCHA's HAP allowance, used to pay for the voucher program, by approximately $151,000 because of the 2003 HAP overpayment. By December 2006, Plaintiff alleges that CCHA had secretly accumulated approximately $160,000 in administrative reserves over the 105% cap and that all named Defendants conspired to avoid a future recapture of these funds by planning to spend down the reserves by early 2007. Plaintiff claims that, in furtherance of this plan, aided and abetted by Defendants the City and Naffah, Mendez and CCHA submitted false claims to CCHA to use HUD reserves for improper purchases for Defendant the City, and not CCHA. Plaintiff maintains that the false claims involved requests for payment on a vehicle, vehicle taxes, and furniture, all for use of the City and not CCHA.

Plaintiff alleges that she began to audit the above purchases in September 2007 while

employed as the City's finance manager, and was about to begin a thorough investigation when she was abruptly terminated. Plaintiff states that she reported the above to HUD by telephone hotline in May 2008 and to the Federal Bureau of Investigation in October 2008. Plaintiff subsequently filed a complaint[1] on December 18, 2008, alleging that all named Defendants conspired with each other to violate the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), and that she was terminated by the City in retaliation for her investigation of the alleged misuse of the funds. (Dkt. #1).

On January 28, 2010, Defendants filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing that Plaintiff's allegations did not constitute sufficient facts to state a claim upon which relief can be granted under the FCA, and that Plaintiff failed to plead with sufficient particularity the acts constituting the fraud alleged in her complaint. (Dkt. #15.) The Court found that Plaintiff had alleged enough facts to state a claim under the FCA, but that she did not meet the heightened pleading requirements to state a fraud claim. (Dkt. #31.) Accordingly, the Court dismissed Plaintiff's complaint with leave to amend.

On April 12, 2010, Plaintiff filed her FAC, bringing a sole cause of action under the FAC. (Dkt. #34.) On May 5, 2010, Defendants filed the present motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Dkt. #36.) On June 26, 2010, Plaintiff filed an opposition (Dkt. #43), and on July 1, 2010, Defendants filed a reply (Dkt. #49). On July 8, 2010, the Court held a hearing on the matter.

## III. DISCUSSION

In their motion to dismiss, Defendants argue that Plaintiff fails to meet the jurisdictional requirements set forth in the FCA. (Defs.' Mot. 3:3-5, Dkt. #36.) Defendants contend that the transactions upon which Plaintiff bases her claim were publicly disclosed prior to Plaintiff filing suit, and because Plaintiff is not an original source of that information, her *qui tam* action under the FCA is not proper. *Id.* at 3:10-19.

---

[1] Plaintiff initially brought the action on behalf of the United States, which declined to intervene in the action. (Dkt. #9.)

In response, Plaintiff contends that the public disclosure bar is not satisfied because the documents relied upon by Defendants do not amount to public disclosures; Plaintiff argues that had there been a public disclosure, she is an original source of the disclosed information. (Pl.'s Opp'n 2:21-26, Dkt. #43.)

**A.  Legal Standard**

Rule 12(b)(1) provides that a court may dismiss an action for lack of subject-matter jurisdiction. The plaintiff has the burden of establishing that jurisdiction exists. *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).

The FCA has its own jurisdictional test, which provides that a court cannot maintain jurisdiction over an action brought by a private individual which is "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the . . . person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). As contemplated in this section, an original source is defined as an "individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

In determining whether an FCA claim is barred due to lack of subject matter jurisdiction, the Court must first address whether there has been a prior public disclosure of Plaintiff's allegations. *U.S. ex rel. Foundation Aiding The Elderly v. Horizon West,* 265 F.3d 1011, 1014 (9th Cir. 2001) (internal quotations and citations omitted). Only if the Court determines that there has been a public disclosure, is the issue of original source, as defined in 31 U.S.C. § 3730(e)(4)(B), addressed. *Id.*

**B.  Application to the Case at Bar**

Defendant contends that the allegations and transactions Plaintiff challenges have already been disclosed to the public through a publicly held City Council meeting. (Defs.' Mot. 5:17-6:8, Dkt. #36.) Specifically, Defendant claims that the information stated in Plaintiff's FAC is the same information disclosed in the meeting and in the documents from that meeting, which were made

4

available to the public. (Defs.' Mot. 7:4-16, Dkt. #36.) Defendant further contends that Plaintiff is not an original source of the disclosed information because her knowledge of the information was not obtained until she started her employment with CCHA, which was after the initial disclosure. (Defs. Mot. 9:7-11, Dkt. #36.) Therefore, Defendant argues that Plaintiff could not have had a hand in the disclosure of the information. (Defs.' Mot. 9:14-19, Dkt. #36.)

In response, Plaintiff argues there has not been a public disclosure of the claims made in her FAC. (Pl.'s Opp'n 5:10-14, Dkt. #43.) According to Plaintiff, no public disclosure occurred because the documents referencing her allegations were maintained in CCHA and HUD files and were not disclosed to the general public. (Pl.'s Opp'n 5:14-25, Dkt. #43.) Plaintiff further argues that even if the Court determines there was a public disclosure, her claim should survive because she was an original source of that disclosed information. (Pl.'s Opp'n 9:17-19, Dkt. #43.)

1. Public Disclosure

To determine whether there has been a public disclosure, the Court must make two separate determinations. *Horizon West,* 265 F.3d at 1014. The Court must first address whether the disclosure to the public was made through an acceptable public forum such as a civil, criminal, or administrative hearing, an administrative or Government report, audit, investigation or the news media. *Id.* If the Court determines there has been a disclosure through one of the above forums, then the Court must determine if Plaintiff's claim is more than just mere information; that "the content of the disclosure consisted of the allegations or transactions giving rise to the [Plaintiff's] claim." *Id.* (internal quotations and citations omitted).

Public disclosure under the statute can occur in three different ways: (1) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (2) in a congressional, Government Accountability Office or other Federal report, hearing, audit or investigation; or (3) from the news media. 31 U.S.C. § 3730(e)(4)(A).

*a. A Public Disclosure Was Made*

Defendants claim there was a public disclosure because the transactions and allegations made by Plaintiff were discussed in an administrative hearing. (Defs.' Mot. 5:24-6:6, Dkt. #36.)

According to Defendants, Plaintiff's allegations of false certifications and misappropriation of funds were disclosed in a joint City Council and CCHA public meeting as well as in a staff report that was made available to the public for that meeting. *Id.* The staff report was created on December 11, 2006, and the public meeting took place on December 18, 2006. (Patch Decl. Ex. A-1, Ex. A-2, Dkt. #38.)

In response, Plaintiff argues no public disclosure took place because the staff report on the Budget Modification Request was only an internal government document. (Pl.'s Opp.'n 7:13-16, Dkt. #43.) This one document, according to Plaintiff, is nothing more than one government employee telling another employee about the existence of excess funds above the requisite cap, and she argues that this is not enough to trigger the jurisdictional bar of the FCA statute. (Pl.'s Opp.'n 6:9-10, 7:14-16, Dkt. #43.) Additionally, Plaintiff argues that one copy of the Budget Modification Request being left on a City Building Department counter and the City Library for the members of the public to copy if they wish is not a sufficient public disclosure. (Pl.'s Opp.'n 7:23-27, Dkt. #43.) The Budget Modification Request is a document sent by Susie Mendez, the Housing Director, to the CCHA regarding a request for purchases in the current calendar year. (Patch Decl. Ex. A-2, Dkt. #38.) The document also included an "information" section where information was included about the funds for the purchases, and a "recommendation" section which stated the opinion the staff wanted the board to adopt. *Id.*

Upon review of the parties' arguments, the Court finds that Defendants made a public disclosure made by Defendants. Defendants held a City Council meeting regarding what action to take on the Budget Modification Request and that meeting was open to the public. (Defs.' Reply 2:5-8, Dkt. #49.) The Ninth Circuit has found that it is self-evident that agency actions are "inherently administrative." *A-1 Ambulance Service, Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000). Official actions of an agency are administrative in nature and qualify as a public forum authorized by the statute. *A-1 Ambulance Service*, 202 F.3d at 1243-44.

Further support of a public disclosure can be shown when an agency's meeting has followed California law by being held open to the public and making the documents at the meeting available

to the public. *Id.* at 1244. The public meeting in this case was mandatorily held accordingly to California law. (Defs.' Reply 4:22-25, Dkt. #49.) Under the Brown Act, public agencies and public councils are required to have their actions taken in an open public forum. Cal. Gov. Code §54950. Defendants complied with the Brown Act by taking action on the Budget Modification Request at a public meeting and supplying that information to the public. (Defs.' Reply 5:14-17, Dkt. #49.) The City Council members and CCHA members received an agenda and a staff report that contained the Budget Modification Request prior to the public meeting. (Patch Decl. ¶4, Dkt. #38.)[1] As part of practice, all agendas as well as all backup reports and information that accompany the agendas for the City Council meetings were left at the public counter in the Public Works Department at City Hall and at the Del Norte Public Library, where it is available to any requesting party for their review. (Nickerson Decl. ¶8, Dkt. #37.)[2] Additionally, the agenda and staff report regarding the December 18, 2006 meeting was made part of the City Council and CCHA packet and was available to the public for review. (Mendez Decl. ¶3-4, Dkt. #39.)[3] Accordingly, the Court finds that the

---

[1] Plaintiff objects to the admissibility of the Patch Declaration and the attached staff report, citing Federal Rules of Evidence ("FRE") 602, 802, 803(b). The Court has reviewed Plaintiff's objections and finds these documents admissible under the FRE. Defendants have made a showing that the business records exception to the hearsay rule is satisfied, stating that Ms. Patch is the custodian of business records for the City and that the staff report was included within those business records kept for the City. Further, it is a regular practice for the City to make agenda and reports for City Council meetings and they are kept by Ms. Patch as a regularly conducted business activity. Therefore, Ms. Patch does not need to have worked at the time the record was created to show she has personal knowledge of the documents.

[2] Plaintiff objects to the admissibility of the Nickerson Declaration, citing FRE 402, 601, 602, 802. The Court overrules these objections. Nickerson declares under penalty of perjury that as part of her practice as City Clerk, she posts agendas of City Council meetings and additional information attached to the agendas of such meetings in various public places, and that the December 18, 2006 agenda was posted in those public places. (Nickerson Decl. ¶2, 4, 5, 8, 9, Dkt. #37). Therefore, the Court finds that she has the requisite personal knowledge to overcome Plaintiff's objections.

[3] Plaintiff objects to the admissibility of the Mendez Declaration, citing FRE 601, 602, 802. The Court overrules these objections. Mendez declares under penalty of perjury that she produced the typewritten portion of the staff report dated December 11, 2006. (Mendez Decl. ¶3, Dkt. #39.) Mendez was the person who produced the staff report and therefore she has the requisite personal knowledge regarding information within the report.

aforementioned facts are evidence of disclosure through an administrative hearing, thus satisfying the forum requirement outlined in 31 U.S.C. § 3730(e)(4)(A).

As the Court finds there was a public disclosure, it now must determine if the disclosure was substantially the same as Plaintiff's allegations and claims.

### *b.  Disclosure Had The Same Content As Plaintiff's Allegations*

In order for the public disclosure to be a jurisdictional bar to Plaintiff's claims, the disclosure must contain "enough information to enable the government to pursue an investigation into [the claims]." *U.S. ex. rel. Unite Here v. Cintas Corp.,* No. C 06-2413, 2007 U.S. Dist. LEXIS 98776, at *36 (N.D. Cal. 2007). The Ninth Circuit has interpreted this to mean "that [plaintiff's] allegations must be 'substantially similar' to those publicly disclosed, and any disclosed transactions must simply disclose the misrepresented state of facts and a true state of facts." *Id.* (citing *U.S. ex. rel. Foundation Aiding the Elderly v. Horizon West, Inc.,* 265 F.3d 1011, 1015 (9th Cir. 2001)).

When an allegation of fraud is made, the underlying statements that make up that fraud have to be shown. *Horizon West, Inc.,* 265 F.3d at 1015. The *Horizon West* court established a test: $X + Y = Z$, where $Z$ is the alleged fraud, $X$ is the misrepresented facts, and $Y$ is the true state of facts that make up the elements of fraud. *Id.* The Ninth Circuit has also recognized that "where the public knows of information proving an allegation, it necessarily knows of the allegation itself." *Wang v. FMC Corp.,* 972 F.2d 1412, 1418 (9th Cir. 1992).

Here, Plaintiff argues that Defendants did not disclose enough information because the Budget Modification Request does not contain enough information to prove an allegation of fraud. (Pl.'s Opp'n 9:1-4, Dkt. #43.) However, Defendants contend that the Budget Modification Request and the meeting in which it was discussed, both of which were available to the public, do contain information regarding the HUD funds and the rationale as to how the spending of the excess funds would occur. (Defs.' Mot. 7:12-15, Dkt. #36.) According to Defendants, the information in the Budget Modification Request is substantially similar to the allegations of fraud made by Plaintiff in her FAC. (Defs.' Mot. 7:10-13, Dkt. #36.)

Upon review, the Court finds that the information section of the staff report as disclosed to

the public contains the material elements of fraud. The staff report, containing the Budget Modification Request, states that since 2004, the administrative fees reserve has accumulated funds exceeding the required 105% cap. (Patch Decl. Ex. A-2, Dkt. #38.) The accumulation occurred because of fear of recapture of funds by HUD due to a previous overpayment. *Id.* The Executive Director of the CCHA wrote this staff report and claimed that because of past experience with HUD, she erred on the side of caution regarding HUD recapturing funds and therefore, the administrative reserves accumulated $160,000 in excess of the required 105% cap. (Mendez Decl. ¶ ¶ 2, 3, Dkt. #39; Patch Decl. Ex. A-2, Dkt. #38.) The staff report also reveals that some part of the excess funds would be spent on items unrelated to administrative fees or the housing voucher program. (Patch Decl. Ex. A-2, Dkt. #38.) Further , at a City Council meeting, there was approval to spend the excess fees on two vehicles for the City as well as other requested items. *Id.* The Court finds that this information would put someone on notice that fraudulent behavior was afoot. "The substance of the disclosure . . . need not contain an explicit allegation of fraud, so long as the material elements of the allegedly fraudulent transaction are disclosed in the public domain." *Horizon West, Inc.,* 265 F.3d at 1014 (internal quotations and citations omitted). The staff report states that there is a requisite cap on the administrative fee reserves; this represents X in the fraud equation because it is a true state of facts. Retaining funds in excess of that cap to err on the side of caution with HUD and to spend down those excess funds, on potentially improper purposes, represents Y in the fraud equation as a misrepresentation of facts. Z in the fraud equation is the alleged fraud. *Id.* at 1015. As discussed above, the Ninth Circuit has recognized that when the public knows of the material elements of fraud, represented through X and Y of the equation, then the public necessarily knows of the allegation of fraud from these material elements, represented as Z of the equation. *Wang,* 972 F.2d at 1418. From this information provided in the staff report, the Court finds there was enough disclosed to establish the material elements of fraud and, therefore, an allegation of fraud was necessarily disclosed within the staff report.

Based on the foregoing, the Court finds that the information which constitutes the basis of Plaintiff's claims is substantially similar to what was stated in the staff report. Therefore, the

Plaintiff's allegations and transactions were publicly disclosed prior to her complaint.

        *c.*     *Summary*

The Court finds the information in the staff report and agenda were publically disclosed in an administrative hearing, an authorized forum under 31 U.S.C. § 3730(e)(4)(A). Additionally, the Court finds that the information within those documents was publicly disclosed, was sufficient to establish the material elements of fraud, and was substantially similar to Plaintiff's FCA claim. The Court thus concludes there was public disclosure of Plaintiff's FCA claim.

    2.    <u>Original Source</u>

Next, the Court must determine if Plaintiff is considered an original source of the information that was found to be publically disclosed. *Horizon West*, 265 F.3d at 1014. A claim can survive the jurisdictional bar established by a public disclosure if the plaintiff can show that they were an original source of the disclosure. 31 U.S.C. § 3730(e)(4)(A). Under the statute, original source refers to an individual who either:

> (1) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publically disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing suit.

31 U.S.C. § 3730(e)(4)(B).

Defendants argue that Plaintiff cannot be the original source of the public disclosure because she was hired after the City Council and CCHA meeting took place. (Defs.' Reply 6:15-20, Dkt. #49.) The meeting took place in December 2006 and Plaintiff was not hired until Spring 2007. *Id.* Additionally, Defendant argues that since Plaintiff did not become aware of this information until after it had already been disclosed in a public meeting, she could not have played a role in publicly disclosing that information. (Defs.' Mot. 9:4-19, Dkt. #36.)

In response, Plaintiff argues that she was an original source of the public disclosure because she had direct and independent knowledge of the information, voluntarily disclosed that information to the Government before filing suit, and had a hand in the public disclosure of that information. (Pl.'s Opp'n 9:14-17, Dkt. #43.) Plaintiff claims she had knowledge of the HUD cap and excess fee

reserves because of the nature of her position as the Finance Director for CCHA. (Sanches Decl. ¶ 6-7, Dkt. #44.) Plaintiff also claims she voluntarily disclosed her knowledge of HUD misappropriations to Ms. Mendez during a meeting that Plaintiff arranged. (Sanches Decl. ¶ 8-9, Dkt. #44.) Lastly, Plaintiff argues she had a hand in the disclosure of the misappropriations through the whistle-blower action she previously filed. (Pl.'s Opp'n 9:16-17, Dkt. #43.)

### a. *Plaintiff's Disclosure Was Not Made Prior To The Public Disclosure*

Individuals who disclose information to the Government may be an original source regardless of whether the disclosure is direct or indirect. *Wang,* 972 F.2d at 1419. Anyone who helped disclose the information to the Government would be considered to have indirectly disclosed. *Id.*

Here, Plaintiff claims she made a disclosure of the false certifications and HUD misappropriations to the CCHA Director, Susie Mendez, at a meeting in September 2007. (Sanches Decl. ¶8, 9, Dkt. #44.) Plaintiff also claims that she only became familiar with HUD requirements in March 2007 when she was the Director of Finance for CCHA. (Sanches Decl. ¶2, 3, Dkt. #44.)

In response, Defendant argues that Plaintiff did not disclose the information prior to the public disclosure because she did not start working with CCHA until after the public meeting in December 2006 had already occurred. (Defs.' Mot. 9:7-10, Dkt. #36.)

As stated above, the allegations and transactions Plaintiff claims to have disclosed were publicly disclosed in a joint City Council and CCHA public meeting. (Defs.' Mot. 6:5-13, Dkt. #36; Defs.' Reply 2:5-8, Dkt. #49.) This meeting and the documents associated with the meeting were made available to the public in December 2006. (Patch Decl. Ex. A-1, Ex. A-2.) Therefore, the Court finds that although Plaintiff disclosed information regarding the misappropriations to the CCHA, her claims are without merit because the information was disclosed previously in December 2006 at the public meeting. Thus, Plaintiff did not make a disclosure prior to the public disclosure.

### b. *Knowledge Independent Of The Public Disclosure Does Not Add To The Disclosure*

If an individual has direct and independent knowledge that adds to the public disclosure and

that individual voluntarily provided the information to the Government, then that individual may be an original source. 31 U.S.C. § 3730(e)(4)(B). The Ninth Circuit has held that "direct and independent knowledge" exists when the individual "discovered the information underlying his allegations of wrongdoing through his own labor." *U.S. ex rel. Devlin v. State of Cal.*, 84 F.3d 35, 360 (9th Cir. 1996). "If, however, someone republishes an allegation that already has been publicly disclosed, he cannot bring a qui tam suit, even if he had "direct and independent knowledge" of the fraud." *Wang*, 972 F.2d at 1419.

Plaintiff argues that the public disclosure of the staff report does not mention her claims of false certification to HUD. (Pl.'s Opp'n 8:12-14, Dkt. #43.) Plaintiff argues that she is the original source on this matter because she had independent knowledge of this information due to her employment. (Pl.'s Opp'n 9:14-17, Dkt. #43; Sanches Decl. ¶6-9, Dkt. #44.)

Defendant responds that Plaintiff is not an original source because her claims of false certification are not necessary to make a disclosure of fraud. (Defs.' Reply 4:1-9, Dkt. #49.) Defendant, therefore, argues that Plaintiff did not have any independent knowledge to add anything to what was already disclosed to the public in December 2006. (Defs.' Mot. 9:17-19, Dkt. #36.)

Here, the allegations and transactions made in Plaintiff's claim serve merely to republish the information already made public and do not add to what was already disclosed. Even though Plaintiff discovered this information while working as the Director of Finance for CCHA, the allegations and transactions or misappropriation of the HUD funds were already disclosed in the information section of the staff report at an administrative hearing prior to Plaintiff's employment. (Patch Decl. Ex. A-2, Dkt. #38.) In the staff report, the information section acknowledges there is a 105% cap in administrative fees and that the Housing Authority has been maintaining fees above that required cap because there was a fear of recapture of funds from a previous HUD overpayment. *Id.* These are the same allegations Plaintiff makes in her FCA claim. In her FAC, Plaintiff states that funds were accumulated above the 105% cap and that CCHA planned to spend the funds on items not associated with administrative fees or the housing voucher program. (FAC ¶34-36, Dkt. #34.) These are the material elements that depict fraud and are disclosed in the staff report. The

allegations Plaintiff makes regarding the false certifications are not necessary and do not add to what was already disclosed. Accordingly, the Court finds that Plaintiff's complaint simply republishes information already publicly disclosed and adds nothing to that disclosure.

   *c.*  *Summary*

The Court finds that Plaintiff is not an original source and therefore her FCA claim is jurisdictionally barred. Plaintiff did not have a hand in disclosing the information because it was previously disclosed in December 2006 and she did not become aware of the behavior until March 2007. Even though Plaintiff had knowledge independent of the disclosure, her claim simply republishes the material that has already been disclosed to the public and adds nothing new. Therefore, Plaintiff is not an original source and her FCA claim is barred.

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss in its entirety. The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: November 10, 2010

                       Maria-Elena James
                       Chief United States Magistrate Judge